IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEANNE NAJAR MAREZ,

       Plaintiff,

v.                                                          CV 14-328 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.


**MEMORANDUM OPINION AND ORDER**

Jeanne Najar Marez applied for Disability Insurance Benefits and Supplemental Security Income on May 1, 2009, based on major depressive disorder and an anxiety disorder. (Administrative Record ("AR") 73-74.) After her applications were denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on Marez's Motion to Reverse and Remand for a Rehearing, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Marez's reply. (Docs. 17, 21-22.) For the reasons explained below, I grant Marez's motion and remand this case to the SSA for proceedings consistent with this opinion.

**STANDARD OF REVIEW**

In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wall*

*v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is only a scintilla of evidence supporting it. *Hamlin*, 365 F.3d at 1214 (quotation omitted). However, substantial evidence does not require a preponderance of evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See Hamlin*, 365 F.3d at 1214 (quotation omitted). I may reverse or remand if the ALJ has failed "to apply the correct legal standards, or to show us that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2014). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from

performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Marez is a fifty-two-year-old woman with a GED and some vocational classes. (AR 203.) She worked as a truck driver and construction flagger from 1993 through 1998, as a home-health caregiver from October 2006 through February 2008, and as a breakfast hostess at a motel from 2009 to 2010. (AR 198.)

The record is extensive. I do not address everything in the record, but rather target my factual discussion to the facts necessary to the disposition of this case.

In August of 2008, Marez indicated to staff at Valencia Counseling Center Services that she was ambivalent about taking medication for depression and anxiety, despite having been prescribed medication. (AR 354.) She reiterated this reluctance during counseling sessions for the next several years. (*See, e.g.*, AR 377, 527-28.) Marez consistently indicated to her providers that she did not want to take narcotic pain medication for her physical ailments, but preferred non-narcotic pain management such as naproxen and Flexeril. (*See, e.g.*, AR 479, 484, 514.)

Dr. Chiang, a non-examining consultant for the state agency, conducted a Psychiatric Review Technique and a Mental RFC Assessment of Marez on September 1, 2009. (AR 359-76.)

In the Psychiatric Review Technique, Dr. Chiang determined that Marez suffers from an unspecified anxiety disorder and moderate and recurrent major depressive disorder. (AR 373.) Based on these diagnoses, Dr. Chiang found that Marez had mild restrictions on activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, and pace. (*Id.*)

In the Mental RFC Assessment, Dr. Chiang found that Marez had moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 359-60.) Dr. Chiang noted no other significant limitations. (AR 359-60.) Dr. Chiang wrote that Marez "can understand, remember, and [carry] out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with [coworkers] and supervisors, and respond appropriately to changes in a routine work setting. Public interaction should be limited." (AR 361.)

Dr. Hammons conducted a consultative examination on Marez on May 10, 2012, and completed a medical source statement. (AR 595-604.) Marez's records indicated diagnoses of depression, left carpal tunnel syndrome, left shoulder impingement, and patellofemoral chondromalacia in the right knee. (AR 595.) Marez reported that she could dress and feed herself, stand for fifteen minutes, sit for hours, walk for fifty feet, lift forty pounds, drive, sweep, mop, vacuum, cook, do dishes, shop, and go up and down stairs. (AR 596.) Dr. Hammons noted that there was no specific treatment prescribed for Marez's carpal tunnel, which impacts her non-

dominant hand, and observed no significant decrease in Marez's ability to stand, sit, walk, lift, carry, see, hear, speak, reach, handle, or grasp. (AR 597.)

In her medical source statement, Dr. Hammons determined that Marez can lift up to ten pounds continuously, twenty pounds frequently, and fifty pounds occasionally; carry up to ten pounds continuously and twenty pounds occasionally; sit for three hours, stand for an hour, and walk for thirty minutes without interruption; sit for six hours, stand for three hours, and walk for two hours in an eight-hour workday; continuously reach, handle, and feel with both hands; frequently finger with both hands; occasionally push and pull with both hands; frequently balance; frequently climb stairs or ramps; occasionally climb ladders or scaffolds; occasionally stoop; never kneel, crouch, or crawl; not be exposed to unprotected heights; and have limited exposure to extreme cold. (AR 600-04.) Dr. Hammons cited Marez's left carpal tunnel syndrome, bilateral knee pain, abnormal x-rays, and fear of heights as the bases for her assessment. (AR 600-04.)

## HEARING TESTIMONY

At the hearing on January 10, 2012, the ALJ and Marez's attorney questioned Marez and a Vocational Expert ("VE"). (AR 38-71.) Marez testified that she has a history of depression, but does not take medication because it made her more suicidal, and she found that therapy was effective. (AR 51.) Marez testified that she takes naproxen for her knee pain but does not take narcotic medications because they make her drowsy. (AR 59.)

The VE testified that Marez had past relevant work as a caregiver, construction technician clerk in a lab, and a flagger for the highway department. (AR 70-71.) Her work as a caregiver was semi-skilled, medium work with a Specific Vocational Preparation ("SVP") of 3;

as a construction technician clerk in a lab was semi-skilled, light work with an SVP of 3; and as a flagger was unskilled, light work with an SVP of 2. (AR 70-71.)

### THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on September 28, 2012. (AR 18.) At step three, the ALJ concluded that Marez had mild restrictions in activities of daily living, moderate difficulties in social functioning, and mild difficulties with concentration, persistence, or pace. (AR 24.) At phase one of step four, the ALJ determined that Marez had the RFC to perform light work, except that she can understand, remember, and carry out simple instructions; make simple decisions; and attend and concentrate for two hours at a time. (AR 25.) The ALJ further determined that Marez retained the ability to respond appropriately to changes in a routine work setting and to interact adequately with coworkers and supervisors despite some limitations with social functioning. (*Id.*) The ALJ found Marez's statements regarding the intensity, persistence, and limiting effects of her symptoms not credible to the extent that they conflict with the RFC. (AR 26.)

The ALJ recounted the major findings from Dr. Hammons's consultative evaluation and Marez's testimony at the hearing. (AR 28-29.) The ALJ explained her reasons for adopting a restriction to simple work, including Marez's description of daily activities, the fact that she stopped working pursuant to a custody battle rather than to her impairments, her reports to medical personnel that she was doing fairly well with her mental impairment without medications, and her continued part-time work during the pendency of SSA proceedings. (AR 29-30.) The ALJ accorded "significant weight" to Dr. Hammons's opinion. (AR 30.) The ALJ did not specifically address Dr. Chiang's opinion, but disagreed with Dr. Chiang's finding that Marez should have limited contact with the public. (*Id.*) The ALJ wrote that she accorded the

opinions of state agency psychological consultants, including Dr. Chiang, significant weight in all other respects. (*Id.*)

The ALJ did not discuss the physical or mental requirements of Marez's past relevant work at phase two of step four. At phase three, the ALJ concluded that Marez can perform her past work as a flagger, as it is generally performed, because it is unskilled, light work. (AR 31.)

## DISCUSSION

Marez argues that the ALJ erred at all three phases of step four. At phase one, Marez argues that the ALJ failed to properly address the opinions of Drs. Hammons and Chiang, erred in her credibility determination, and failed to conduct a function-by-function evaluation when arriving at the RFC. Marez then argues generally that the ALJ's RFC assessment is not supported by substantial evidence. At phase two, Marez argues that the ALJ failed to make findings regarding the requirements of Marez's past relevant work. Finally, at phase three, Marez argues that the ALJ's finding that she could perform her past relevant work as a flagger is not reasonably reviewable because there were no phase two findings.

## I.   Phase One Findings

### a. Dr. Hammons's Opinion

Marez argues that the ALJ failed to properly evaluate Dr. Hammons's opinion because she did not explain why she did not adopt Dr. Hammons's opinion or discuss Dr. Hammons's RFC Assessment, in violation of Social Security Regulation ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[1] Marez claims that Dr. Hammons's RFC assessment, which limited Marez to walking for a total of two hours in an eight-hour workday, is in conflict with the ALJ's RFC

---

[1] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

determination for light work. Therefore, Marez argues, the ALJ did not actually accord significant weight to Dr. Hammons's opinion.

When deciding the weight to assign a medical opinion, the ALJ must consider the factors set forth in 20 C.F.R. §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6), which include the examining relationship, the length and nature of the treatment relationship, the supportability of the findings, their consistency with the record as a whole, and the source's status as a specialist. *See also Lauxman v. Astrue*, 321 F. App'x 766, 769 (10th Cir. 2009) (unpublished) (citing the factors outlined in the regulations as what the ALJ must consider when weighing medical opinion evidence). "The decision must articulate the ALJ's reasoning such that later reviewers can identify both the weight that was actually assigned to the opinion and the reasons for that weight." *Andersen v. Astrue*, 319 F. App'x 712, 719-20 (10th Cir. 2009) (unpublished) (citation omitted) (discussing treating source opinions). "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

Light work requires "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). SSR 83-10 clarifies that light work "requires standing or walking, off and on, for a total of approximately [six] hours of an [eight-hour] workday." 1983 WL 31251, at *6 (Jan. 1, 1983); *see also Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (discussing the requirements of light work).

The ALJ noted that Dr. Hammons was a consultative examiner, detailed Marez's complaints and Dr. Hammons's findings, and noted that Dr. Hammons's opinion was supported by other medical evidence in the record. (AR 29.) *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ then summarily stated that she accorded "significant weight" to Dr. Hammons's

8

opinion. (AR 30.) However, the ALJ did not address the differences between light work and the functional limitations Dr. Hammons assessed for Marez. Dr. Hammons determined that Marez could stand for three hours and walk for two hours in an eight-hour workday. (AR 601.) The ALJ did not address how these limitations comported with the functional requirements of light work or explain why she concluded that Marez could perform light work given these limitations.

The ALJ's failure to explain the conflict between Dr. Hammons's functional assessment and the RFC, in particular the stand/walk requirements, constitutes reversible error.

### b. Dr. Chiang's Opinion

Marez argues that the ALJ failed to address Dr. Chiang's determination of moderate limitations in Marez's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Marez argues that the ALJ failed to account for these limitations in accordance with SSR 96-8p. Marez cites to *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), for the proposition that it constitutes reversible error for an ALJ to adopt some of the identified mental restrictions and disregard others without explanation.

Marez fails to account for the fact that Dr. Chiang wrote in her Mental RFC Assessment that "[Marez] can understand, remember, and [carry] out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with [coworkers] and supervisors, and respond appropriately to changes in a routine work setting. Public

9

interaction should be limited." (AR 361.) The ALJ adopted this finding almost verbatim in her RFC. (AR 25.)

In *Sullivan v. Colvin*, 519 F. App'x 985 (10th Cir. 2013) (unpublished), the court found *Haga* distinguishable when the ALJ's RFC determination "adequately addressed [the] medical opinion." *Id.* at 989. Because the ALJ addressed Dr. Chiang's opinion in the RFC, and the RFC does not appear to conflict with Dr. Chiang's opinion, this case is more like *Sullivan* than like *Haga*. Therefore, I find that the ALJ adequately addressed Dr. Chiang's medical opinion and did not commit reversible error with regard to the mental limitations in her RFC.

### c. Credibility Analysis

Next, Marez argues that the ALJ erred in her credibility analysis by improperly relying on Marez's appearance and demeanor at the hearing and her failure to take mood disorder medication or narcotic-based pain medication.

"Credibility determinations are peculiarly the province of the finder of fact, and [a reviewing court] will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (quotations omitted). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotations omitted). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to . . . any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). The ALJ must consider several factors, including the objective medical evidence, when assessing a claimant's credibility. *Id.* at *3. These factors include

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . .; and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* When a claimant's allegations of symptoms are supported by the medical evidence, the ALJ may not reject those allegations based purely on the claimant's demeanor at the hearing. *See Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985.)

I find that the ALJ did not err in her credibility determination. The ALJ discussed Marez's reports of her daily activities, her work history from before and after her alleged onset date, her medical treatment, and her hearing testimony. (AR 29-30.) The ALJ addressed the factors included in SSR 96-7p when making her credibility determination. Therefore, I do not find reversible error based on the credibility determination.

### d. Function-by-Function Analysis

Marez argues that the ALJ failed to conduct a function-by-function analysis related to both physical and mental abilities. Marez cites SSR 96-8p and 20 C.F.R. § 404.1545 for this proposition, as well as the notion that the ALJ must separately address each of the seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Marez argues that the ALJ did not separately consider the walking requirement and that this failure constitutes reversible error.

SSR 96-8p requires that the ALJ consider each of the seven strength demands separately: sitting, standing, walking, lifting, carrying, pushing, and pulling. 1996 WL 374184, at *5.

Further, the ALJ must provide a narrative discussion detailing how the evidence supports each conclusion and citing medical and nonmedical evidence. *Id.* at *7. This narrative discussion must "discuss the individual's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis . . . and describe the maximum amount of each [strength demand] the individual can perform based on the evidence available in the case record." *Id.* That is, the ALJ is required to tie evidence to the functional limitations in the RFC by separately considering each function and respective limitations. *See Guana v. Astrue*, No. 11-CV-02781-LTB, 2013 WL 316022, at *6 (D. Colo. Jan. 28, 2013) (remanding the case because the ALJ's discussion was too "general and sweeping . . . merely presenting [the] evidence and an evaluation of it does not bridge the gap between the evidence and the ultimate RFC determination").

In *Southard v. Barnhart*, 72 F. App'x 781 (10th Cir. 2003) (unpublished), the court noted that the ALJ found that the claimant had an RFC for light work[2] and then included how much weight the claimant could lift or carry but did not specifically discuss the claimant's ability to sit, stand, walk, push, or pull. *Id.* at 784. The court remanded the case because of the ALJ's failure to make all of the detailed findings required at step four. *Id.* at 785. Similarly, in *Diggdon v. Apfel*, 189 F.3d 477 (10th Cir. 1999) (unpublished table decision), the court found that the ALJ made a conclusory determination as to the RFC in stating that the claimant could perform light work that allowed her to change position at will, and the court remanded the case for the ALJ to 1) specify the evidence he relied on to make his conclusion and 2) assess the claimant's ability to perform all seven strength demands. *Id.* at *3; *see also Alexander v. Barnhart*, 74 F. App'x 23, 28 (10th Cir. 2003) (unpublished) (finding that an RFC allowing light work did not separately consider

---

[2] SSR 96-8p also states that "[a]t step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' [or] 'very heavy'"; a function-by-function analysis is required first. 1996 WL 374184, at *3.

the seven strength demands and that the ALJ failed to conduct a function-by-function assessment).

There is no mention in the RFC of walking limitations. (AR 25.) In her narrative discussion, the ALJ also failed to analyze the seven strength demands. There was no reference to the seven strength demands throughout the ALJ's discussion. (*See* AR 25-31.) Instead, as in *Guana*, the ALJ's discussion is general and sweeping, presenting evidence from the sources but not providing connection to the RFC. (*Id.*; 2013 WL 316022, at *6.) The ALJ in this case thus did not bridge the gap between the evidence and her RFC determination. Based on the ALJ's failure to assess Marez's work-related abilities on a function-by-function basis as required under SSR 96-8p and associated case law, I find grounds to remand this case. On remand, the ALJ will analyze the seven strength demands in crafting her RFC.

Because I have found reversible error at phase one of step four, I do not address whether the RFC is supported by substantial evidence.

## II.     Phases Two and Three Findings

At phase two of step four, Marez argues that the ALJ erred by not making findings as to the mental and physical demands of Marez's past relevant work. After the ALJ has made an RFC finding, the next phase of step four of the sequential evaluation process is to "make findings regarding the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1024 (citation omitted). "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* (quoting SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). This information may come from the claimant, an employer, or another informed source. SSR 82-62, 1982 WL 31386, at *3. The ALJ made no such findings at step four, and this too constitutes

reversible error. On remand, the ALJ will make express findings as to the requirements of Marez's past relevant work.

Similarly, at phase three, Marez argues that the ALJ failed to compare Marez's RFC with the functional requirements of her past relevant work. The ALJ is required to "reach a conclusion concerning whether [the claimant] could satisfy the demands of her past relevant work, based on [the ALJ's] findings in phases one and two." *Doyal v. Barnhart*, 331 F.3d 758, 760-61 (10th Cir. 2003). The ALJ failed to make any phase two findings and therefore could not meet the requirements of phase three. On remand, the ALJ will make explicit findings concerning Marez's RFC and the requirements of her past relevant work.

## CONCLUSION

I find that the ALJ erred at step four by failing to properly address Dr. Hammons's opinion, failing to conduct a function-by-function analysis for the RFC, failing to make findings as to the functional requirements of Marez's past relevant work, and failing to compare Marez's RFC with the functional requirements of her past work. The motion is GRANTED, and the case is remanded to the SSA for further proceedings consistent with this opinion.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.